In re TEA STATION INVESTMENT, INC., Leslie Cohen appearing for Appellants, and David Grimes appearing for Appley. All right. Ms. Cohen, do you wish to reserve any time? Yes, Your Honor. Four minutes, please. All right. Thank you. You may commence. Thank you. May it please Your Honorable Judges, thank you for allowing me to appear on behalf of Appellant TEA STATION in this matter. This is a case where the appellee was a claimant, Ms. Zhou, who attempted to file a class action, failed, ultimately had an individual allowed claim of the bankruptcy of about $460, and in the end the fees awarded were $168,000. We appeal the award of the attorney's fees. There are three specific bases for our appeal. First, that Ms. Zhou only prevailed on her individual claim, so she's only entitled to fees for prosecuting the individual claim, and for that we rely on the California Labor Code, Section 1194A, which allows fees to the prevailing parties, since the only prevailing party was the individual claim. Second, that the bankruptcy court should not have awarded any fees for the work on the class action claims, because they were not related to or intertwined with the individual claims. For that, we cite the case of Thorn, 802 F. 2nd. 1131, and Villa Senor, 2011 Westlaw 13213903. Judge Basin below did find that he made a decision that they were intertwined or related, but we think that was erroneous. Third, that even if the bankruptcy court was correct that the case was related, or that the class action and the individual claims were related, the fees still needed to be reasonable relative to the results obtained. And for that, we cite to the Hensley case, 461 U.S. 446. Here, there was never any reasonableness analysis comparing the fees relative to the results. Is the correct law that you're citing to a federal case, the California standard for is there a proportionality requirement in the labor law context? Your Honor, I believe there is, and I think I have a labor code site here, but I'm having trouble finding it. But I do think that because the Hensley test is Supreme Court, I think that still needs to be followed one way or the other. And I'm not 100% sure, Your Honor. It's a good question. But I believe that the proportionality is required under California law as well. In addition, Your Honor, to sort of expand on that point, under Section 1194, the interpretation of Section 1194 was certainly at issue, which leads us to what we assert is a de novo standard of review. And that was based on the Tudor-Saliba case, which was a federal case interpreting California law. And that's 452 F. 3rd, 1055 9th Circuit. If it's okay, does that sufficiently answer, Your Honor? Sure. I didn't mean to get in the middle of your flow. That's okay. No problem. But the Tudor-Saliba case actually was very similar to our case. There was a bunch of claims asserted. It wasn't a class action, but there were a number of different claims asserted. All of them were found to be frivolous except for one. And ultimately, the one successful claim, legal fees were awarded on that. And what they did was there were five claims. They knocked it down to 20%. And that was rejected by the 9th Circuit. The 9th Circuit finding that an analysis of actually what was done on what aspect of the case was required. And that's what was missing here. The Bankruptcy Court never performed the analysis to say, okay, well, how much did she actually do on the individual claim? I mean, that's a matter of perspective, isn't it? I mean, the Bankruptcy Court did quite a bit. I mean, he gave you the opportunity to submit the color-coded charts after it wasn't attached to the original for error, and went back, reviewed it, revised it down. Looking at the color-coded, most of the dispute is as to what you classify as class certification. He found it to be intertwined and related to discovery primarily, and a lot of discovery that worked off. So, I mean, when you say he didn't, I imagine your opposing counsel is going to disagree. I'm sure he will. I think a couple points on that, and that is a very fair point, Your Honor. One of the things I noticed in Judge Basin's opinion on this was that he talked about how some of it might be related to the claims against the principles, which really was a different point. And ultimately, in his findings, at least the ones that were quoted in the appellee's brief, the comments were, well, discovery could lead to this or that, but there was never any ultimate, like a final analysis of that point. I don't mean to interrupt, but that brings up another central point, which is that, and I think Judge Basin, on the case law, made clear that this is all at the time it was undertaken. So, yes, it did not lead ultimately to, but he found, and it kind of gets into his policy discussions as well, that it was all reasonable from his perspective and the discovery as well, and that's what causes these large fees, or at least his willingness to allow a reduced amount, which is still a large fee from your perspective. I think that's a fair point. I think what ultimately the analysis misses is, or what the bankruptcy court's analysis missed, was some reasonable, again, proportionality to the results obtained, and the fact that, which the bankruptcy court never really did address, is that these really, the class action claim never should have been brought. It was clear from the record that Ms. Zhao didn't even know about the other locations. She didn't know the other employees. There was no attempt to compare her services as a kitchen employee to people who had other, to employees who had other positions in other locations owned by the related entities, and all of our entities were in Chapter 11, but there was never anything from Ms. Zhao to indicate that there was any basis to assert a class action in the first place, and so even if there's some theory that there may have been some relationship, ultimately because the class action really never should have been brought and really was frivolous, and I don't think we have a finding that it was frivolous, so I'm not saying that we do, but since there's nothing in this record to support that there was ever any basis to assert a class action, we think that the relatedness fails for that reason as well. Can I ask you again, because I'm not really comfortable with your proportionality argument in the sense that California wage an hour is a minefield for employers. I think we can all agree with that, but many of the individual violations are small-dollar violations, and the fee awards frequently are multiples of those awards because otherwise employers would go unchecked. So what would be, in your mind, if you were applying a proportionality analysis, what California case law suggests to you that proportionality, that there's a metric there, because I've seen some awards that certainly don't look proportional under any, you know, it's not a double, it's not a treble kind of thing, right? I think that's right. I think the bill that's in your case that we cited, which I had a Westlaw site for that, is a California case, and that supports our argument as to the lack of relatedness. So it doesn't really directly address proportionality. Again, I think fair point, Your Honor, but I think I get that sometimes the claims might be more, and I think that's okay, but ultimately, again, here there's no indication that there ever should have been a class action, no attempt, and sort of like, okay, so the more you spend and the more you make the other side spend on legal fees, then the more you can get because then the other side, as here, will turn around and say, well, gee, it was just only 20% or whatever the percentage was, but it was an enormous amount of money on a claim that could and should have been brought in small claims court. Now, as an example... Did your client ever offer to pay the, you know, before they had to do this legal work, what is it, the $6,000 or whatever it was, the small-dollar claim? I know that there were multiple settlement offers in far higher numbers than that all the way along the way. Okay. Is that in the record? I'm not sure, Your Honor. Okay. I'd have to check that, and I apologize. That's fair. I would give permission to supplement, but I am 100% sure because I made a lot of the offers, but I wasn't the only one. We had state court counsel as well, and we tried very hard to get this settled. They may not be in the record because that stuff is usually confidential, but to the extent the court's interested, we tried very hard to settle this for a lot more money before we filed bankruptcy, and as the court sometimes sees, we come in, a lot of times bankruptcy counsel comes in and says, let's get this settled so that we don't have to go through a bankruptcy, and that is exactly what happened here. If I may use my last minute on standard of review, we acknowledge that the decision to award attorney's fees is abuse of discretion, but we don't think that that's what's relevant here because we're not so much challenging the decision, we're challenging the legal analysis, and again, that's the Tudor-Saliba case. This case required an interpretation of California Labor Code section 1194, and under Tudor-Saliba, the decision, the application of law is reviewed de novo to the extent that there's a factual finding of relatedness. I think that's actually a legal decision, so I think it's de novo for that reason, but to the extent that it... You think the reasonableness of the fees is legal? I apologize, Your Honor. I intended to say relatedness. I'm sorry, Your Honor. But isn't... I mean, I guess it's the same question, though. I mean, the relatedness. I mean, Judge Basin sat. I mean, he lived this case. Why do we get to go in de novo when he's lived it, experienced it, and concludes that there was a sufficient level of relatedness? I mean, how is that legal? Because I think it requires an analysis of what is meant by prevailing party here. This was a class action case that failed. There was not a prevailing party in the class action. The prevailing party was only on the individual claim and only after the class action was knocked out and denied. And so the legal interpretation is there must only be a recovery as a matter of law. The prevailing party can only be the prevailing party on the individual claim since the class action was denied. All right, thank you. We'll let you reserve the rest of your time. Thank you. All right, Mr. Grimes. Good morning, panel. This case ultimately comes down to whether this appellate panel finds the bankruptcy court was clearly erroneous when it found that the disallowed class claims were intertwined with Ms. O's individual claims on the exact same facts and theories of law. Of course, it did not. In their reply brief, the debtors point to a series of trial court decisions that went the other way on facts specific to those cases. They offer no precedent suggesting that this court is obligated to overturn the bankruptcy court's decision. The bankruptcy court explained that it thought Ms. O's work in pursuing discovery as to other potential claimants and debtors was at least corroborative of her own claims and therefore justified some remuneration. The debtors claim that the court made some error of law in making that decision, but the debtors' own quoted precedent shows the court made the exact right analysis. They quoted from Dilt v. Penske Logistics in the Southern District of California, which was quoting Environmental Protection Information Center v. Department of Forestry and Fire Protection, which wrote, Under this analysis, an unsuccessful claim will be unrelated to a successful claim when the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised. The course of conduct is what Zoe was ultimately successful on, time-shaving, not granting meal breaks, not granting rest breaks. Those are the exact same things that ultimately the court declined to grant class certification to simply because Zoe worked in the back of house, in the kitchen, instead of in the front of house where most of the employees work. That's a little bit of an oversimplification, but... Yeah, I agree. Go ahead. I had a question, but I'm not going to ask it. You win. Go ahead. Sorry. If you have questions, I'm happy to respond. Well, just to clarify, I guess, the determination by Judge Basin was that Ms. Zoe wasn't an appropriate class representative, correct? Correct. There was no conclusion made that these, because she's not a class representative, so we're not taking, you know, in terms of whether there were broad prevailing parties to the company. That stopped that analysis, but we don't have any conclusion that that was the case, correct? Or that that wasn't the case. It's just... Correct. Right. There was certainly never any finding that the claims were frivolous by Zoe, or the class claims were frivolous by Zoe. It's just she was the wrong person to bring them. Correct. That was the finding of the bankruptcy court. And, obviously, after we brought suit, within months, the CEO of the debtor entities, all of them, wrote in his declaration that they changed their pay practices several months afterwards. So I think that, again, speaks to the fact that these were not frivolous claims as to these other entities, where Zoe didn't speak with the employees. That's not really what's relevant to the potential viability of a class claim. It's the common practices, common ownership, that sort of thing. And then, while the amount sought, or while the amount awarded here, is significantly larger than Zoe's awarded claim, which, I'll correct Ms. Cohen, it was around $4,600, not $460. I believe it was reduced on confirmation to about a tenth of what she got, or what she was granted. The proportionality of attorney's fees to the damages award is not the measure of reasonableness, and that is Warren v. Kia Motors America, 30 Cal App, 5th, 24, where it was found, in fact, that it was an abusive discretion to tie the fee award to a proportion of the damages recovery where a fee-shifting statute applied. That was in the Song-Beverly Act, but the same rationale applies to this action under the Labor Code, since both are remedial measures where small monetary recoveries and individual actions would often not encourage attorneys to accept those cases. And I don't want to press this issue too much. I think there's probably some validity to saying that we didn't press for a catalyst theory, the court didn't completely address a catalyst theory, but in reviewing decisions of the district court, the appellate panel may affirm on any ground-finding support in the record. You can look to the declaration of Yulang Wang, the CEO of the entities, who again said, after we filed this lawsuit, they changed their pay practices. They went to ADP. Doesn't that really kind of just bleed into the policy concerns that Judge Basin raised on several occasions and really kind of emphasized? Certainly, it can, and I think that also, ultimately, an attorney's fee award is something of an equitable determination to promote the policy of defending labor rights, defending worker rights in California. California has a very strong policy of doing that. And if he looks at the attorneys having done valuable work that vindicated important rights of employees, he's allowed to make an equitable determination that some fee award is justified, almost whatever he thinks is appropriate. He has very broad discretionary powers in terms of awarding an attorney's fee. And once again, there's simply no case law that the debtors provided showing that he abused that discretion. He looked at the facts. He looked at, he knows the case. He knows what we argued. He knows what work we did with respect to the class claims, the individual claims. And he made the, I don't think, very controversial decision that our investigation into these class claims was at a minimum corroborative of the, provided corroborative evidence of the claims that Zoe ultimately prevailed on, and therefore made the determination to award only 25% of the amount we requested, which was itself a significant discount from the actual load star in this case. And on that, I will cede the rest of my time, unless you have any questions. Mr. Gann? I don't have any questions. Thank you. Thank you very much. All right. Ms. Cohen, rebuttal, you have about three minutes. Thank you so much. Apologies for not being on top of these cases in the first part of the argument. We did cite mostly federal cases, but two California cases on the proportionality issue that Your Honor had requested information on earlier. Those are the Chavez and the Sokolov cases, both cited in the brief, and they actually state that one must look at, and this is not a quote, but the point is that the courts in California, again, look at proportionality in determining reasonableness. Are these in a labor code or a remedial statute context? I believe the Chavez case is, Your Honor, and the statement is that California law is consistent with federal law on this point, and that the significance of the overall relief needs to be considered relative to the hours reasonably expended. I think the catalyst theory was not raised below, so I don't think I need to say much more about that. Let me ask you about proportionality and going back to the quote, because here there was a substantial discount, I mean, of total fees. I'm going to put aside that there may have been more than 800 because I'm going to go, wow, but, you know, we're awarding, he's awarding about 25% of the total fees, and so proportionality in terms of what was recovered, but the proportionality does seem favorable in terms of what was actually awarded, doesn't it? I think it's better than 100%, but in, again, they spent even more than that just because the plaintiff's counsel put in huge numbers doesn't mean that any of it was reasonable, and, again, I look back at section 1194 that it has to be what was really prevailing here. This class action failed, but to your honor's point, yes, it was a significant reduction. It wasn't enough of a reduction relative to the fact that it was really, the result was, the original claim was only 6,600, and it was reduced to about 4,600, and if I misspoke, I think Mr. Grimes mentioned, I may have incorrectly stated that, but that was the range, 6,600 knocked down to about 4,600, and so it was always a small claim. It was never a class action. It was a failed class action. It took an enormous amount of work on our side to finally get that disallowed, but it should have been brought in small claims in the first place. Again, if the record didn't show, let's say it was denied for some other reason, or maybe class certification wasn't denied, but it was still a low number, that might be a different story, but class certification was denied, and the record showed that Ms. Zhao didn't even know about the other entities and never established a relationship to the other companies or other employees who were not similarly situated. Thank you, Your Honors. Okay, thank you. All right, thank you for your good arguments. We will take this under submission.
judges: Taylor, Spraker, Gan